Elizabeth REEVES, Plaintiff-Appellee,

v.

Martha OLSEN, Commissioner of Revenue of the State of Tennessee, Defendant-Appellant.

Supreme Court of Tennessee, at Jackson.

May 28, 1985.

Michael W. Catalano, Asst. Atty. Gen., Nashville, for defendant-appellant; W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, of counsel.

Walker T. Tipton, Covington, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

The Plaintiff-donor brought this action to recover gift taxes paid under protest to the Defendant Commissioner of Revenue. The complaint stated that the Department of Revenue had appraised the property involved at an excessive amount and the Plaintiff sought to recover the deficiency assessment. The chancery court assumed jurisdiction in the cause and ruled that the taxpayer's property had been improperly assessed. Therefore, the taxpayer was held to be entitled to a refund on her gift tax return. The Commissioner of Revenue has appealed to this Court, alleging that the trial court lacked subject matter jurisdiction over the lawsuit by virtue of the Plaintiff's failure to exhaust her administrative remedies under T.C.A. § 67–8–116. In the alternative, the Commissioner argues that even if the trial court properly assumed jurisdiction, that the evidence adduced at trial preponderates against the finding of the chancellor as to the value of the gift.

On June 2, 1980, Plaintiff gave to her three children a one-third undivided interest in approximately 990 acres of real property located in Tipton County, Tennessee. The property lies ten miles southeast of Covington, the county seat of Tipton County, and 38 miles northeast of Memphis, Tennessee. There exists adequate frontage on each of the roads leading into and dividing the property and approximately 80 percent of the property is capable of being farmed.

Plaintiff filed a state gift tax return on March 19, 1981. At that time she valued the gift at $190,000.00 and consequently paid $7,660 in gift taxes. On June 29, 1981, the Department of Revenue sent a notice of assessment of additional gift tax to Plaintiff which appraised the "full and true value" of the donated property at $338,400.00. Consequently, the Defendant assessed a deficiency in gift tax against the Plaintiff in the amount of $8,754.02, including interest. The total amount of the tax and interest due was paid under protest by the Plaintiff on July 28, 1981. On December 22, 1981, the present lawsuit was filed in the Chancery Court for Tipton County. After answering the complaint, the Defendant filed a motion for judgment on the pleadings on grounds the trial court lacked subject matter jurisdiction because the Plaintiff had failed to exhaust her administrative remedies under T.C.A. § 67–8–116. The chancellor denied the motion and after a trial on the merits the property was valued by the chancellor at $239,250.00. Based upon this conclusion, the chancellor entered an order requiring Defendant to refund to the Plaintiff the sum of $6,045.27 plus interest from July 28, 1981, the date of the payment under protest of the additional gift tax by Plaintiff.

The procedure for challenging the Commissioner of Revenue's appraisal of property for gift tax purposes is set out in T.C.A. § 67–8–116 which provides as follows:

Taxpayer's remedies.—(a) If, in the determination of the existence of a deficiency, the commissioner appraises property at a value higher than that thought by the donor to be its true value, the donor shall have a right to file with the commissioner, within thirty (30) days from the date of the receipt of the notice of deficiency, an appeal from such appraisal, addressed to a board composed of the governor, the treasurer, the secretary of state, the comptroller and the commissioner of revenue, which board shall have authority to consider the exceptions filed, hear proof and determine the valuations in dispute, and the findings by a majority vote of the board shall be conclusive as to all parties in interest, subject only to the constitutional right of review in the courts.

(b) Except as provided in subsection (a), the sole remedy of any person from whom the commissioner demands a tax claimed under the authority of this part shall be a payment of the tax under protest and a suit for the recovery thereof, which proceedings shall be in accordance with the provisions of part 9 of chapter 1 of this title.[1]

The Commissioner argues that the above statute provides an exclusive administrative remedy which the taxpayer must exhaust before she may seek redress in the courts. It is not disputed that the taxpayer did not "file with the Commissioner, within thirty (30) days from the date of the receipt of the notice of deficiency, an appeal from such appraisal, addressed to a board composed of the governor, the treasurer, the secretary of state, the comptroller and the Commissioner of Revenue...." Consequently, the Commissioner argues that the taxpayer failed to exhaust her administrative remedy and that therefore the chancel-

lor was without subject matter jurisdiction over the lawsuit.

The Commissioner relies heavily on our decision in *Bracey v. Woods,* 571 S.W.2d 828 (Tenn.1978), where we held that under our inheritance tax statute, T.C.A. § 30–1620 (presently codified at § 67–8–411), a taxpayer must exhaust his administrative remedies before proceeding in court to recover taxes paid under protest. We recognized the general rule that "where an administrative remedy is provided by statute, relief must be sought by exhausting this remedy before the courts will act." *Tennessee Enamel Mfg. Co. v. Hake,* 183 Tenn. 615, 620, 194 S.W.2d 468, 470 (1946), citing 42 Am.Jur., *Public Administrative Law* § 197, at 580 (1942). The taxing statute at issue in *Bracey,* T.C.A. § 30–1620, involved language similar to that found in subsection (a) of T.C.A. § 67–8–116. The findings of the board were to be final "as to all parties in interest, subject only to the constitutional right of review in the courts." T.C.A. § 30–1620 (now § 67–8–411(b)).

In *Bracey,* the taxpayer had invoked the administrative remedy but before the board reached a final decision he brought suit in court for taxes paid under protest. We held that the mere initiation of the administrative procedure was insufficient to provide the court with subject matter jurisdiction. The taxpayer must "await the hearing and determination of her appeal on the merits by the board before seeking relief in the courts." *Bracey v. Woods, supra,* 571 S.W.2d at 829, citing *Fentress County Bank v. Holt,* 535 S.W.2d 854 (Tenn.1976); *Rosewood, Inc. v. Garner,* 476 S.W.2d 273 (1972); *Elliott v. Equalization Board,* 213 Tenn. 33, 372 S.W.2d 181 (1963).

The statute at issue in *Bracey* contained no language comparable to subsection (b) of T.C.A. § 67–8–116 which provides that

Except as provided in subsection (a), the sole remedy of any person from whom the Commissioner demands a tax claimed under the authority of this part shall be

---

1. Part 9 of Chapter 1 provides that suit must be brought within six (6) months after making payment under protest. T.C.A. § 67–1–903. Suit may be tried in the county of the taxpayer's residence. T.C.A. § 67–1–904. These provisions have been complied with by Plaintiff.

a payment of the tax under protest and a suit for recovery thereof, which proceeding shall be in accordance with the provisions of part 9 of chapter 1 of this title. The Plaintiff argues that this scheme, unlike that involved in *Bracey*, contemplates alternative methods of assessment and that where alternative methods are provided for, exhaustion of the administrative remedy is not required. It is Plaintiff's position that the taxpayer is provided the option of paying the tax under protest and filing suit under T.C.A. § 67–1–901 et seq. *or* seeking administrative review of the assessment before payment of the tax.

The Commissioner argues that public policy supports the requirement of exhaustion of administrative remedies. In particular the Commissioner argues that requiring the taxpayer to resort to administrative remedies allows the administrative body to develop expertise in valuation, to utilize uniform methodologies across the state and prevents courts from being burdened by specialized questions.

■ We do not believe that T.C.A. § 67–8–116 requires the exhaustion of administrative remedies before a taxpayer can pay his taxes under protest and bring suit under T.C.A. § 67–1–901 et seq., and we refuse to require exhaustion when the statute by its plain words does not. "Except when required by statute, exhaustion of administrative remedies is not an inexorable command, but is a matter of sound judicial discretion." *Cerro Metal Products v. Marshall*, 620 F.2d 964, 970 (3d Cir. 1980).

To hold that *Bracey v. Woods, supra,* is controlling in this case would deny any substantive meaning to T.C.A. § 67–8–116(b), which expressly authorizes alternative avenues of relief for the taxpayer. Interference and interruption of an administrative proceeding was an important consideration in *Bracey* that is absent in the case at bar. No administrative proceeding is pending in this case and no interruption in administrative processes will result by our allowing this lawsuit to be maintained. One of the important reasons for making

administrative procedures exclusive and for judicial application of exhaustion doctrine in cases "where the statutory requirement of exclusivity is not explicit is to avoid premature interruption of the administrative process." *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194, 203 (1969). Since no interruption is threatened here, we see no reason to discretionarily apply the exhaustion doctrine when the statute does not require it.

■ Our reading of T.C.A. § 67–8–116 in its entirety leads us to the conclusion that the legislature intended that an election exist between the administrative remedy and immediate resort to the courts. We see no other explanation for the language of § 67–8–116(b). If the legislature intended that the taxpayer exhaust her administrative remedies before bringing suit under T.C.A. §§ 67–1–901 et seq., then subsection (b) would not have been included in the remedial scheme. We believe the language of § 67–8–116 indicates that the legislature intended that alternative remedies be available to the taxpayer. "Where administrative remedies are not exclusive, but merely cumulative to or concurrent with a judicial remedy, the rule that administrative remedies must be exhausted before resort is had to the courts does not come into play." *Town of Berwyn Heights v. Rogers*, 179 A.2d 712, 714 (Md.1962). *See also Scarborough v. Mayor and Council of the Town of Cheswold,* 303 A.2d 701 (Del. ch. 1973); *see generally* 2 Am.Jur.2d, *Administrative Law* § 598 (1962).

Today's decision in no way undermines our decision in *Bracey v. Woods, supra,* or other decisions construing tax schemes other than the gift tax. A comparison of the inheritance tax statute and the gift tax statute at issue here leads us to the inevitable conclusion that the legislature intended that a different remedial procedure be available under the gift tax. If the legislature intended that the remedies under the gift and the inheritance tax schemes be co-extensive, then the language of the statutes should be reformed to clearly indicate that intention. The different

language of § 67–8–116(b) compels a different result than that which was reached under the inheritance tax at issue in *Bracey v. Woods, supra.* The gift tax statute does not require exhaustion and we see no reason why in our discretion we should require it. The chancellor below did not err in assuming jurisdiction.

 Having determined that the trial court possessed jurisdiction over the subject matter, we must now decide whether the evidence preponderates against the valuation placed on the property by the chancellor. The valuation of the property is a finding of fact, review of which in a non-jury case "shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Rule 13(d), Tennessee Rules of Appellate Procedure.

Three expert witnesses testified at trial regarding the market value of the property in question. John Shoaf, an independent appraiser hired by the Plaintiff appraised the property at $191,666.00. Roger Gilliam, an appraisal Supervisor for the Division of Property Assessments of the Comptroller of the Treasury was requested by the Defendant to appraise the property and he valued it at $374,133.00. The third expert was John Jordan, a farm real estate appraiser who was originally hired by the Plaintiff but who testified for the Defendant. He estimated the property to be worth $308,333.00. After hearing all the testimony and viewing all of the exhibits presented, the chancellor concluded that the "full and true" value of the gift was $239,250.00.

We have carefully reviewed the evidence in this record and we are unable to conclude that it preponderates against the chancellor's finding. Even though our review is de novo upon the record, the opinion of the chancellor on fact questions is entitled to great weight on appeal, where he saw the witnesses face to face. *Mathis v. Campbell*, 22 Tenn.App. 40, 117 S.W.2d 764 (1938).

The chancellor is not required to accept or reject in its entirety the testimony of any particular expert regarding the value of land. *See, e.g., State ex rel. Department of Transportation v. Brevard*, 545 S.W.2d 431 (Tenn.App.1976). The chancellor's determination of value is within the range of the expert testimony admitted at trial.

We find both issues in favor of the Plaintiff. The judgment of the trial court is accordingly affirmed. Costs on appeal are taxed to the State in accordance with T.C.A. § 67–1–905.

COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concur.