# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

March 19, 1997

Cecil W. Crowson
Appellate Court Clerk

ANDREA GIOVINO,                )
                              )
    Plaintiff/Appellant,      )
                              )   Williamson Circuit
                              )   No. 91698
VS.                           )
                              )   Appeal No.
                              )   01A01-9609-CV-00388
BARRY KINCAID and             )
EDDIE CAPLES,                 )
                              )
    Defendants/Appellees.     )


APPEAL FROM THE CIRCUIT COURT FOR WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE


For the Plaintiff/Appellant:

E.E. Edwards, III
EDWARDS & SIMMONS
Nashville, Tennessee

For the Defendants/Appellees:

Lisa M. Carson
Franklin, Tennessee


# VACATED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves the forfeiture of $100,000 in currency used to purchase one hundred pounds of marijuana from an undercover officer. A person claiming to be the innocent owner of a portion of the seized funds filed a declaratory judgment action in the Circuit Court for Williamson County asserting that the money had been seized illegally, that she had been deprived of an opportunity to file a claim for the money, and that the money should be returned. The trial court dismissed the complaint because the claimant had failed to exhaust her administrative remedies under the Tennessee Drug Control Act. We have determined that the claimant was entitled to a portion of the declaratory relief she sought and, therefore, vacate the order dismissing her complaint.

## I.

On November 7, 1991, John Fogarty paid Barry Kincaid $100,000 in cash for one hundred pounds of marijuana. He was arrested immediately because Mr. Kincaid turned out to be a Williamson County deputy sheriff working undercover as part of the Twenty-First Judicial District Drug Task Force.[1] Following the arrest, Mr. Kincaid turned over Mr. Fogarty's money to Gary Luther, another task force member, and Mr. Luther gave Mr. Kincaid a notice of seizure naming Mr. Kincaid as the owner and possessor of the money. Mr. Luther gave Mr. Fogarty a notice of seizure for his vehicle but not for the $100,000.

The notice of seizure triggered an administrative forfeiture proceeding by the Department of Safety. Mr. Fogarty did not know about the proceeding because only Mr. Kincaid had received the formal notice of seizure. A lawyer representing Andrea Giovino, Mr. Fogarty's common-law wife, sent Mr. Kincaid a letter on November 21, 1991, claiming $75,000 of the money obtained from Mr.

---

[1]Mr. Fogarty eventually pleaded guilty to conspiracy to deliver a Schedule VI controlled substance in excess of seventy pounds. He was sentenced to eight years in the state penitentiary and was required to pay a $100,000 fine.

Fogarty.[2] Mr. Kincaid never responded to the letter and never informed Ms. Giovino or her lawyer of the forfeiture proceedings then pending before the Department of Safety. The record contains no evidence that either Ms. Giovino or her lawyer knew that these proceedings had already begun or that Mr. Kincaid ever provided the Department of Safety with a copy of the letter written by Ms. Giovino's lawyer.

The Department of Safety did not conduct a forfeiture hearing for the $100,000 because no one filed a timely claim for the money. On December 3, 1991, the Commissioner of Safety issued an order summarily forfeiting the money and releasing it to the Twenty-First Judicial District Drug Task Force. Mr. Kincaid received notice of this action, but the Department of Safety did not notify either Mr. Fogarty or Ms. Giovino that the money had been forfeited because they had not filed a claim with the department and because the department had never identified them as owners, possessors, or claimants of the money.

On December 23, 1991, Ms. Giovino filed suit in the Circuit Court for Williamson County to require Mr. Kincaid and Eddie Caples, the director of the Twenty-First Judicial District Drug Task Force, to return the money in accordance with Tenn. R. Crim. P. 41(f) or to pay it into court. She also requested declaratory relief concerning the validity of the seizure and the forfeiture proceeding. Messrs. Kincaid and Caples denied any wrongdoing and asserted that Ms. Giovino's complaint should be dismissed because her exclusive remedy was the administrative claims procedure in the Tennessee Drug Control Act and because Ms. Giovino had failed to exhaust her administrative remedies. On February 21, 1996, the trial court dismissed Ms. Giovino's complaint because she had not exhausted whatever remedies she might have had before the Department of Safety. Ms. Giovino perfected this appeal.

**II.**

_____

[2]Ms. Giovino stated that she had mortgaged her property to raise the money and had given it to Mr. Fogarty with the understanding that he intended to use it for a legitimate business investment in Tennessee or to purchase a home in Tennessee for them and their children.

State and local law enforcement officers have unquestioned authority to seize money used in an illegal drug transaction. In addition to using the money as evidence in a criminal prosecution, the officers may also commence administrative forfeiture proceedings in order to obtain the seized money to defray all or part of the expenses of their drug enforcement activities. *See* Tenn. Code Ann. §§ 53-11-451(a)(6)(A), -451(d)(4) (Supp. 1996). Proceeds from forfeiture proceedings have now become a significant source of funding for undercover drug enforcement activities at the state and local level.

Persons adversely affected by the seizure of personal property incident to a drug arrest have two remedies for recovering the property. First, Tenn. R. Crim. P. 41(f) permits them to file a motion in the court where the criminal action is pending to recover the property because the search and seizure was invalid or unlawful. Second, Tenn. Code Ann. § 53-11-201(c)(1) (Supp. 1996) authorizes them to file a claim with the Department of Safety. This administrative claims procedure is the only vehicle for recovering confiscated property available to persons who claim to have an innocent possessory interest in the property and who are not challenging the legality of the search or seizure.

Persons desiring to file a claim with the Department of Safety must file a written claim within thirty (30) days after receipt of the notification of seizure, Tenn. Code Ann. § 53-11-201(c)(1), and must also file a cost bond or affidavit of indigency in lieu of a cost bond. Tenn. Code Ann. § 53-11-201(c)(2) & (3). Failure to satisfy these requirements is fatal to any claim. *Woodall v. Lawson,* 784 S.W.2d 657, 659 (Tenn. Ct. App. 1989); *Johnson v. Roberts*, 638 S.W.2d 401, 403 (Tenn. Ct. App. 1982). Tenn. Code Ann. § 53-11-203 (1991) requires that confiscated property be summarily forfeited if no one files a timely claim.

## III.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

The courts formulated the exhaustion doctrine to provide guidelines for determining when a judicial remedy should supplant an administrative one. *See* 2 Charles A. Koch, Jr., *Administrative Law and Practice* § 10.22, at 177 (1985). The doctrine's dual purposes are to preserve the autonomy of administrative agencies and to promote judicial efficiency. *McCarthy v. Madigan,* 503 U.S. 140, 144-45, 112 S. Ct. 1081, 1086 (1992). In its simplest form, the exhaustion doctrine provides that judicial remedies will be considered premature until a litigant has pursued and exhausted available administrative remedies. *Jackson v. Swift Eckrich, Inc.,* 53 F.3d 1452, 1456 (8th Cir. 1995); *Elliott v. Equalization Bd. of Carter County,* 213 Tenn. 33, 38, 372 S.W.2d 181, 183 (1963); *Tennessee Enamel Mfg. Co. v. Hake,* 183 Tenn. 615, 620, 194 S.W.2d 468, 470 (1946).

Reflecting a deference toward administrative proceedings, the four principle tenets of the exhaustion doctrine include:

1.   Parties should be discouraged from deliberately bypassing or interrupting available administrative remedies;

2.   Administrative agencies should be encouraged to apply their expertise and discretion to correct their own mistakes;

3.   Parties should be encouraged to facilitate judicial review of agency decisions by developing the relevant facts and generating a proper record at the agency level; and

4.   Judicial economy should be promoted by avoiding unnecessary appeals and unnecessary repetition of administrative and judicial fact-finding.

*Montes v. Thornburgh,* 919 F.2d 531, 537 (9th Cir. 1990); *Andrade v. Lauer,* 729 F.2d 1475, 1484 (D.C. Cir. 1984). Thus, subject to several well-recognized exceptions,[3] the courts presume that a litigant should first pursue and exhaust available administrative remedies and, accordingly, place the burden on the litigant to prove why it should be permitted to pursue a judicial, as opposed to an administrative, remedy.

---

[3]The common exceptions to the exhaustion doctrine are discussed in 2 Charles H. Koch, Jr., *Administrative Law and Practice* § 10.24[4] & [5] (Supp. 1997). Tennessee courts have recognized the futility exception, *State ex rel. Jones v. City of Nashville,* 198 Tenn. 280, 284, 279 S.W.2d 267, 268 (1955); *Turner v. Regional Mental Health Ctr. of Oak Ridge, Inc.,* C.A. No. 134, 1986 WL 8276, at *1 (Tenn. Ct. App. July 29, 1986), and the exception involving purely questions of law. *Fentress County Bank v. Holt,* 535 S.W.2d 854, 857 (Tenn. 1976).

Exhaustion is mandatory only when required by statute. It is a matter of judicial discretion in all other circumstances. *Reeves v. Olsen,* 691 S.W.2d 527, 530 (Tenn. 1985); Kenneth C. Davis, *Administrative Law for the Eighties* § 26.1, at 434 (1989). Accordingly, courts should consider exhaustion questions on a case-by-case basis and should balance the respective interests of the administrative agency and the parties in light of the exhaustion doctrine's purposes and the particular administrative process involved. *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S. Ct. 2457, 2467 (1975); *McKart v. United States,* 395 U.S. 185, 193, 89 S. Ct. 1657, 1662 (1969). Courts are unlikely to require exhaustion when an agency is causing or threatening to cause irreparable injury through clearly illegal action. 4 Kenneth C. Davis, *Administrative Law Treatise* § 26.1, at 414 (2d ed. 1983).

Exhaustion should not be required in this case for two principal reasons. First, Ms. Giovino did not file her suit in order to circumvent available administrative remedies. To the contrary, she filed suit seeking judicial redress for being improperly denied access to her administrative remedies. Secondly, there is a substantial question concerning the Department of Safety's present ability to provide Ms. Giovino with meaningful relief. The forfeiture proceedings involving the $100,000 seized from Mr. Fogarty have already been concluded, and the money has been returned to Williamson County. We know of no statute giving the Department of Safety continuing jurisdiction over confiscated personal property once it has issued a final forfeiture order and returned the property to the seizing agency. Should Ms. Giovino now file a claim with the Department of Safety, she will be confronted with arguments that her claim is not timely and that the matter has been finally resolved.[4]

Considering Ms. Giovino's complaint at this time will not interrupt any pending administrative forfeiture proceedings and will not create a precedent that will enable other claimants to circumvent the administrative claims process. The complaint raises issues of law that do not require any special administrative

---

[4]The record contains a letter from an assistant attorney general representing the Department of Safety stating that the department would be willing to permit Ms. Giovino to file a claim but that the department would challenge the timeliness of the claim.

expertise to decide. Accordingly, we find that the trial court erred by dismissing Ms. Giovino's complaint on the ground that she had failed to exhaust her administrative remedies under the Tennessee Drug Control Act.

## IV.
### ADEQUACY OF THE NOTICE OF SEIZURE

Tennessee Const. art. I, § 8 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibit the forfeiture of private property without first providing a hearing to those with an interest in the property. *Redd v. Tennessee Dep't of Safety,* 895 S.W.2d 332, 334 (Tenn. 1995); *Merchants Bank v. State,* 567 S.W.2d 476, 480 (Tenn. Ct. App. 1978). Adequate notice is essential to a fair hearing, *In re Riggs,* 612 S.W.2d 461, 465 (Tenn. Ct. App. 1980), *cert. denied,* 450 U.S. 921 (1981), because affected parties cannot intelligently exercise their right to a hearing without it. *Greene v. Lindsey,* 456 U.S. 444, 449, 102 S. Ct. 1874, 1877 (1982); *Baggett v. Baggett,* 541 S.W.2d 407, 410 (Tenn. 1976).

Adequate notice must be more than a mere formality or gesture. *Burden v. Burden,* 44 Tenn. App. 312, 319, 313 S.W.2d 566, 570 (1957). In order to satisfy due process requirements, the notice procedure must be reasonably calculated to inform all interested persons of the pending action. *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 795, 103 S. Ct. 2706, 2709 (1983); *Potts v. Gibson,* 225 Tenn. 321, 329, 469 S.W.2d 130, 133 (1971). As a constitutional minimum, notice by mail is required with regard to persons whose names and addresses are known or can be easily ascertained. *Schroeder v. City of New York,* 371 U.S. 208, 212-13, 83 S. Ct. 279, 282 (1962); *Baggett v. Baggett,* 541 S.W.2d at 410. Accordingly, notice procedures in forfeiture proceedings like this one should reasonably maximize the likelihood that potential claimants will receive notice of the proceeding. *Redd v. Tennessee Dep't of Safety,* 895 S.W.2d at 334-35; *Brown v. Tennessee Dep't of Safety,* App. No. 01A01-9102-CH-00043, 1992 WL 63444, at *4 (Tenn. Ct. App. April 1, 1992) (No Tenn. R. App. P. 11 application filed).

The officers who seized the $100,000 on November 7, 1991, knew Mr. Fogarty's name and address as soon as they arrested and booked him. Three weeks later, Mr. Kincaid knew that Ms. Giovino claimed $75,000 of the $100,000 taken from Mr. Fogarty. Instead of providing these persons with actual notice of the pending forfeiture proceedings as to the seized money, Messrs. Kincaid and Luther told them nothing, relying instead on the fiction that Mr. Kincaid was the owner and possessor of the money. A fair conclusion to be drawn from these circumstances is that the officers intended to effect a forfeiture of the funds before Mr. Fogarty or anyone else became aware of the pending forfeiture proceedings.

The notice procedure devised by Messrs. Kincaid and Luther was not reasonably calculated to provide potential claimants with notice of the forfeiture proceedings. If anything, it was a clever attempt to comply with the letter but not the spirit of the notice requirement in Tenn. Code Ann. § 53-11-201(a)(1). Forfeiture proceedings must comply with both the letter and the spirit of the forfeiture statutes. *Redd v. Tennessee Dep't of Safety,* 895 S.W.2d at 335; *Range Pontiac Sales Co. v. Dickinson,* 195 Tenn. 228, 233, 258 S.W.2d 770, 772 (1953); *Hays v. Montague,* 860 S.W.2d 403, 406 (Tenn. Ct. App. 1993). Accordingly, the Commissioner of Safety's December 3, 1991 order forfeiting the $100,000 seized from Mr. Fogarty is invalid because the notice on which it was predicated is constitutionally defective.

## V.

Ms. Giovino was entitled to a declaratory judgment finding (1) that she and Mr. Fogarty were deprived of fair and reasonable notice of the administrative forfeiture proceedings involving the $100,000, (2) that the Commissioner of Safety's December 3, 1991 forfeiture order is invalid, and (3) that Ms. Giovino and Mr. Fogarty are entitled to adequate notice and an opportunity to submit a claim for all or any portion of the seized money. Accordingly, we vacate the order dismissing Ms. Giovino's complaint and remand the case for the entry of an order consistent with this opinion. The order should specifically direct the defendants to provide Ms. Giovino and Mr. Fogarty with the notice of seizure required by

Tenn. Code Ann. § 53-11-201(a)(1) in order to enable them to file a timely claim in accordance with Tenn. Code Ann. § 53-11-201(c). We tax the costs of this appeal jointly and severally to Barry Kincaid and Eddie Caples for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCURS:


_____
HENRY F. TODD, P.J., M.S.,


_____
SAMUEL L. LEWIS, JUDGE